Our final case of the day is Anders v. Saul. Yes, Mr. Sutterfield, this is Judge Easterbrook, can you hear me? I can. I'm sorry, I was waiting for the unmute button to appear and I was in the process of calling you. Well, since at least we can hear each other, we will proceed. Anders v. Saul, Mr. Sutterfield. Thank you, Your Honor. Your Honor, this case turns on the ALJ's flawed rationale that neither Anders nor his doctor state how long, how often, or how high he needs to elevate his legs. This error is a linchpin to the ALJ's decision. When it's coupled with the ALJ's failure to discuss important evidence that's at odds with his ultimate conclusion, it undermines his evaluation of Anders' credibility, his RFC determination, and his evaluation of the opinion evidence. The vocational expert retained by Social Security indicated the need to elevate one's legs to the waist level eliminates work. Anders informed his physicians he was getting relief by elevating his legs consistently. That's why he pursued treatment, and his treatment, that's why they prescribed treatment, and his treatment continued. He did not improve. This treatment included such things as physical therapy, where they were manually manipulating the fluid in his legs and in his abdomen. Also given compression hose, they prescribed compression shorts he couldn't afford, they prescribed a pneumatic device, and finally, there was even a proposed invasive program for a vascular condition, which is different, obviously, than lymphedema, which was his underlying problem. When Anders informed his doctors that he obtained relief by elevating his legs, they would understand without him saying so that he's doing that at or above the waist level because he wasn't on earth to find the laws of physics. Water does not flow upward, and that's what fluid in his legs is, essentially. It might have some other biological elements in it, but essentially, it's water, and it's not going to flow upwards unless he gets his legs elevated. So I think in terms of the ALJ saying, well, they need to say how high he elevated his legs, well, again, that's implicit, and they all prescribed treatment with that understanding. With regard to how long he would need to elevate him, obviously, that depends on how he's doing. He notes in some instances that his ability to stand is limited to as little as, or is aggravated as quickly as 10 minutes by the edema, the effects of it. It would be kind of akin to how much gas you need to put in your car. Well, it depends how far I drove and how fast I went, and that's going to dictate, obviously, how long he needs to elevate his legs, and so on. That's going to vary. So to indicate that it would be something that would be a static number that would be asserted into his medical records by his doctors is certainly a false requirement, and Mr. Andrews certainly doesn't control what his doctors either dictate or type into or otherwise enter into his chart. Likewise, the ALJ requirement that be set forth is simply illogical. If one were to think, for example, a boss, somebody calls into their boss and says, you know, the doctor told me bed rest, well, you do that at night, that doesn't mean you can't come in and work during the day. Well, obviously, that's incorrect. The doctor wouldn't necessarily specify, okay, you need to spend X number of hours of the day in bed, but it's implicit that there's going to be substantial interference with that individual's ability to show up for work. In terms of the other aspects of the judge's failure is to include items that have nothing to do with the management of his condition. You'd note he had normal muscle strength. Well, that's not certainly at issue at this juncture. I mean, if one were to look at photos of untreated edema online and say, okay, I see why they want to get a hold of this and prescribe the treatment they gave him, namely compression hose, compression shorts that he was unable to afford, compression devices, and then again, the vascular surgery, it's pretty obviously, you know, why they're looking at this. Same thing, whether he had deep vein thrombosis or not, you know, that's simply an alternative diagnostic approach, you know, going through the routine of eliminating other medical conditions. If he had deep vein thrombosis, then they would look at that as being contributory, maybe the cause or sole cause of his condition. The ALJ, in the course of making the decision, had a number of significant omissions. The blue right by, the fact that compression shorts were prescribed because, you know, so the blue by, the reason they were prescribed, namely had abdominal edema, when he also ignored that he had groin pain that was exacerbated, but with his standing, again, and we're also talking about a situation where he had four plus edema in his right thigh. The commissioner, in responding to that, actually committed a shannery violation by saying, well, you know, he wasn't even being seen for that reason, so that's why the judge ignored it. Well, we don't know why the judge ignored it, but we do know that his edema would be in his upper extremities because it's a result of the damage to his lymphatic system and the removal of his cancerous prostate gland. Mr. Sutterfield, it's Judge Scudder from the courtroom. Let me ask you a question. One of the reactions I'm having to what you're saying is that I don't read the ALJ's opinion as going quite as far as you're characterizing it in terms of ignoring this and ignoring that. I understand the point you're making about the leg elevation, but it looks to me, and this, you know, I get the benefit of your reaction, the ALJ wasn't oblivious to the edema at all, nor the, Mr. Anders, you know, position that he's elevating his legs. All the, and the ALJ sought to accommodate that in the RFC. I think the only point, I read the ALJ's opinion as more limited, though, that, hey, I'm not going to go further with respect to leg elevation because I just don't see any support for it in the medical record. Is that an inaccurate reading? I don't think it's an accurate reading in the context of what the condition is. The edema is, the source is, again, the damage to the lymphatic system is growing. And the, or in his lower abdomen, I should say. And the judge ignores, again, signs and symptoms pertaining to that. You can't address edema unless you get the legs elevated. I mean, and that's, and again, that is what... I understand that, that it's not specified that he's told to keep elevating his legs, but he's certainly not told that's the wrong thing to do. And when you look at the medical literature, if I'm mistaken, let me know, but I'm not aware of any other treatment, the initial treatment, other than leg elevation. And for it to be effective, it has to be waist high or higher. And the VE eliminated work with that. The fact that he's able to get his edema down to where it is, is a tribute to him following through with treatment. There's nothing that prevented him, though, from going as the, you know, bearing the burden to go to the ALJ and say, hey, look, I, unfortunately, I'm not capable of working because this is what I have to do throughout the day to control the pain and swelling. I mean, he could have presented evidence on this, couldn't he? He did at the hearing. And his doctor... I mean, apart from his testimony. Well, but again, it's implicit as doctors know that he's doing that. He's saying it's effective. If he's saying, I'm elevating my legs, it's not effective, then they might say, well, how high are you elevating? Well, I'm getting them up only, you know, at an angle, like knee high or whatever. In other words, a downward slope. Then you might see it in the records where they're correcting him. But if he's doing it correctly and say, I'm doing this and it's working, but these are still my symptoms. What can you do for me? Because I can't hold a job because of this. I don't think it would be, I think it's going too far to say, you know, he somehow controls what they write down. He can't, he can't do that. And I don't think it would be necessarily logical to say, well, you know, certainly the doctors would write that down. I don't see why they would. It's, it's, it's such a, I don't know, again, the, it's also like the sun is yellow. What, why would it be common? The sun came up. No one's going to envision it as being some other color than yellow. And I think it's, it's of that nature that we don't need to have that. I think you need to, again, when it goes back to his medical professionals and they say, okay, you know, this person needs to elevate their legs to the extent that the vocational high school says, hey, there's no work. Then you know, that, that's, if they had come along and he had opinions saying, no, he doesn't need to elevate his legs, that would make, then it would, I think your point would make more, more sense. But I think when, it would be more valid, I should say. But I think in terms of the ALJ, he has basically parsed the evidence in a way, oh, he's got edema in his abdomen. You can't see the timer from where you are, but your time is expired. So it's. Okay. I will stop. I appreciate it. It's Froshour's turn. Thank you. Good morning, your honors. May it please the court, Lindsay Froshour on behalf of the commissioner of social security. Mr. Anders' appeal is simply an invitation for the court to reweigh the evidence here. In finding that Mr. Anders had not proven that he would be unable to perform a primarily seated job without the additional restriction of elevating his legs during the workday, the ALJ considered, quite importantly, that Mr. Anders' treatment records show his doctors never provided recommendations or instructions for elevating his legs. The ALJ also relied on the opinions of the state agency consulting physicians who reviewed the vast majority of the evidence in this case, including the records in which Mr. Anders told his doctors that he elevated his legs. And yet, they opined Mr. Anders was capable of primarily seated work without a restriction for elevating his legs. The state agency consulted opinions as well as the ALJ's observation that no doctor instructed that Mr. Anders should elevate his legs provides substantial support for the ALJ's decision here. Mr. Anders asserts that the ALJ should have found he needed to elevate his legs at work based on his few subjective reports to his physicians. However, the ALJ was not unreasonable to conclude here that such reports were insufficient to prove that Mr. Anders specifically needed to elevate his legs for hours during the workday. The ALJ was not required to accept this subjective allegation and he provided multiple good reasons why he did not do so. The ALJ considered that the examinations performed by Mr. Anders' doctors showed that his edema was generally mild in nature. Indeed, time after time, Mr. Anders' edema was described by his doctors as mild or trace. Mr. Anders does not refute the significance of these mild findings, which the ALJ reasonably found to be a persuasive factor that failed to support Mr. Anders' claim that he needed to elevate his legs for a significant portion of the workday. Mr. Anders claims that the ALJ was illogical to find that the fact that no doctor recommended he elevate his legs was important in this case, asserting that it's reasonable to conclude his doctors made other treatment recommendations under the assumption he was already elevating his legs. However, even if this is a reasonable conclusion that one could make, it's also reasonable to conclude Mr. Anders' physicians did not believe that leg elevation was necessary or important by not recommending that he keep doing so or not providing him any guidance as to how often or how long he should be elevating his legs. Ms. Froshour, I think Mr. Sutterfield makes a fair point that deserves a response from you, I think, or from the Commissioner, and that is that the observations that the ALJ made that Mr. Anders has normal leg strength and can lift his daughter have nothing to do with whether he needs to elevate his legs, literally nothing. And his testimony that he finds relief from his pain and swelling from elevating his legs a few hours a day, of course it's subjective, it's his own account. You argue in your brief, and I was surprised to see it, that it's vague. I don't think there's anything vague about it. It's clear and it's precise. So why isn't that enough to say the ALJ committed error in not crediting this guy's testimony? I mean, the ALJ didn't find that he lied. Right, well, the ALJ here, I suppose, in addressing it… Or that his leg strength is normal. Who cares? Sure, I think stepping back, you know, the ALJ in considering Mr. Anders' case was considering, you know, all limitations here is considering sitting, walking, standing, as well as lifting, and Mr. Anders' assertion about elevating his legs. So the, you know, the strength and sensation findings were, I think, reasonably considered by the ALJ, given the record as a whole. And backing that up is the state agency physician's analysis where the state agency consultants actually referred to the treatment records from Mr. Anders' vascular specialist in finding that he didn't have any numbness and he had full strength. So I think overall, the ALJ was reasonable for this to be one of, you know, the many considerations he had in this case as to Mr. Anders' functional capacity overall. As for his testimony about being unable to bend down to pick up his daughter and the discussing how the ALJ didn't mention his limitation and the ability to do this, the ALJ was overall looking at Mr. Anders' subjective allegations as to his symptoms. And it was relevant as to, you know, his ability to pick up his daughter and determining his capacity for lifting, you know, sitting, standing, walking. Did that fully address your questions, Judge Scudder? I heard your, I just, I don't see how it's neither here nor there, to tell you the truth. Whether you can pick up your daughter doesn't mean that you're relieved from elevating your legs. The two are totally different. And what this fellow is saying is that, hey, look, you're trying to figure out my functional capacity to work an eight-hour shift, okay? And I'm telling you that I need to elevate my legs for several hours a day. Now, your point that, well, all right, but you bear the burden and back that up by the medical record, I think that that's a fair point. But the business that the ALJ's finding is sufficient because his leg strength is normal and he can pick up his daughter, that seems like a non-response to me. I guess I'm not sure what you have to say. You don't need to repeat it. I mean, I understand the position, but. I'll just close my point by saying I'm not sure the ALJ specifically correlated, you know, full strength or the ability to pick up his daughter to, you know, not needing to elevate his legs. You know, it was just one consideration. And even if, you know, this was perhaps irrelevant, you know, as discussed, the ALJ gave other, you know, very strong and sufficient reasons to find that he didn't, you know, fully accept that Mr. Anders specifically had to elevate his legs for hours while at work. And just one more point, Mr. Anders asserts the ALJ was illogical to not find that he was restricted in his ability to work without elevating his legs, given that is common knowledge that leg elevation is a treatment for edema. Even if that is true, and even if one were to accept that Mr. Anders did elevate his legs at times, it was Mr. Anders' burden of proving specifically that he needed to elevate his legs to an extent it would affect his ability to work. On this record, the ALJ reasonably concluded that he did not meet this burden. Unless your honors have any more questions, I'll just close by saying for all these reasons and the reasons set forth in our brief, the commissioner respectfully requests that this court affirm the decision of the district court. Thank you. Thank you very much, counsel. The case is taken under advisement and the court will be in recess. All right, thank you.